### HINMAN *against* BACON.

*A.* being indebted to *B.*, gave him a promissory note, and secured the same by mortgages of several pieces of land. *B.* obtained a decree of foreclosure as to one of those pieces, and, after the time of redemption was expired, assigned the note, with the mortgages, to *C.*, under an agreement that on *A.*'s paying, within six months, the money advanced by *C.* for the note, *C.* would deliver up the note to *A.*, and pay him what the piece of land so foreclosed should be appraised at, by disinterested men, to be agreed upon by *A.* and *C.*, or in the event of their disagreement, each to choose one, and the men so chosen to choose a third. On the last day of the time limited, in the afternoon, *A.* tendered to *C.* a sufficient sum of money, in satisfaction of the note, and the interest and costs thereon, according to the decree of foreclosure; which *C.* refused to accept. *A.* then tendered to *C.* the same sum in satisfaction of the note and decree, and also in satisfaction of the sum, which *C.* had contracted with *B.* to receive for the note, which *C.* accepted. Immediately afterwards, *A.* named to *C.* an appraiser, and demanded of *C.* the note. *C.* objected to such appraiser, on the ground that he lived in another town, and declined naming one, on his part, until he had consulted his counsel, which he engaged to do, early the next morning. *A.* objected to any postponement, insisting that that was the last day. On the next day, *C.* named an appraiser to *A.*, who replied, that he would not have him on his land; and nothing further was done, or offered to be done, relative to an appraisement. Shortly afterwards, *A.*'s son applied to *C.* for the note, who delivered it up to him, and through his hand it passed to *A.* On a bill in chancery, brought by *A.* against *C.* to obtain a reconveyance of the land, or restitution of the money paid, it was held, that the money was paid and accepted, not for the purpose of satisfying the mortgage, but to obtain the benefit of the contract with *B.*; that *A.*, not having performed the stipulations in that contract regarding an appraisement, which constituted a condition precedent, could derive no benefit from the payment of the money under it; that he was not enti-

tled to the land, the title being indefeasibly vested in *C.*, where, by the contract with *B.*, it was to remain ; and that he was not entitled to restitution of the money paid, because it equitably belonged to *C.*

This was a bill in chancery, to obtain from the defendant the conveyance of a piece of land, or the restitution of a sum of money, under the circumstances of the following case.

The plaintiff, on the 25th of *December*, 1799, being indebted to the administrators of *Nicholas S. Masters*, Esq. deceased, in the sum of 641 dollars, 61 cents, gave them his promissory note for that sum, payable on the 25th of *December*, 1802, with annual interest ; and to secure the payment thereof, on the same day, he mortgaged to such administrators a certain piece of land in the centre of the town of *Roxbury*, containing about two acres ; upon which the *Episcopal* church in that town has since been erected. The plaintiff also mortgaged other lands in *Roxbury*, to secure the same debt. In *February*, 1813, the mortgagees obtained a decree of foreclosure, against the plaintiff and the *Episcopal* society, limiting the time for the payment of the mortgage money and costs, amounting to about 800 dollars, to the first *Monday* of *September* following. The money was not paid within the time specified ; and the title of the mortgagees to the land became absolute.

Previously to the passing of the decree, the payees of the note had assigned it, together with the first mentioned mortgage, to *Charles S. Masters* ; and the decree was obtained for his benefit. On the 27th of *November*, 1813, *Charles S. Masters*, for the consideration of 802 dollars, 61 cents, transferred the note to the defendant, under the following written agreement : " I, the subscriber, for a valuable consideration, by me received of *Asahel Bacon*, do assign and transfer to him the said *Bacon*, a certain note of hand, given by *Ephraim Hinman* to the administrators of *Nicholas S. Masters*, Esq., deceased, for the sum of 641 dollars, 64 cents, dated the 25th of *December*, 1799, payable on the 25th of *December*, 1802, with interest annually, on which note there have been sundry payments, and the payment of which was secured by sundry mortgages, made at different times, on several pieces of land lying in *Roxbury*, to said administrators, the equity of redemption in one of which pieces of land, being that on which stands the *Episcopal* church in said town, has been foreclosed, on the petition of said administrators, and the time of redemption expired, and the interest in said note having, by assignment,

become wholly mine; I do agree, that I will procure from said administrators a release of all their claim to said piece of land, the equity of redemption in which has been foreclosed as aforesaid, and will release the same to said *Bacon* within six months from this date; provided always, that the said *Bacon* shall receive, and he does hereby receive, the same, at his risk. And I do urther agree, that I will procure a release of said mortgages, which now remain unreleased, in the names of the said administrators, and will release the same to the said *Bacon*, within six months after the equity of redemption shall have expired, which shall be limited, by any decree of court hereafter to be made upon any such mortgages aforesaid, upon which no decree of foreclosure has been made. *November* 27th, 1813. *Charles S. Masters.*" At the same time, the defendant stipulated with *Masters* as follows: " I do by these presents, stipulate and agree, that I will not put said note in suit against said *Hinman*, nor cause any process, by petition of foreclosure upon any of the mortgages aforesaid, or otherwise, to be instituted against the said *Hinman*, to enforce the collection of the money due on said note, or by me paid therefor, within six months from this date; and on payment, by the said *Hinman*, of the sum of 862 dollars, 61 cents, [the sum paid by *Masters* for the note] within said period of six months, with the interest thereon from this time, I will deliver up said note to said *Hinman*, and will pay to him what said piece of land so foreclosed as aforesaid shall be appraised at, independent of the church thereon standing, and the fixtures and other things thereto pertaining, by judicious, disinterested men, to be agreed upon by me and the said *Hinman*, or in the event of our disagreeing, each one to choose one of said appraisers, and the men so chosen to choose the third; he, the said *Hinman*, on receiving the amount of such appraisement, executing to me acquittances of said land so appraised as aforesaid: And I do hereby agree, that this instrument shall be holden, by said *Masters*, for the said *Hinman's* benefit; provided he performs the conditions herein specified."

The stipulations contained in the agreement first recited were duly performed by *Masters*, whereby the defendant became vested with an absolute estate at law in the land in question.

On the 26th of *May*, 1814, *D. S. Boardman*, Esq. at the request, and in behalf of the plaintiff, and in his presence,

tendered to the defendant, at his house, the sum of 888 dollars, 50 cents, in the following form : " Mr. *Bacon*, there is 888 dollars, 50 cents ; out of that take enough to pay the note you hold against *Hinman* in favour of the administrators of *Nicholas S. Masters*, and the interest and costs thereon, according to a decree of the superior court in favour of said administrators against said *Hinman*, passed *February* term, 1813 : the costs were 25 dollars." The defendant thereupon refused the money thus tendered. Shortly afterwards, Mr. *Boardman*, acting in the same capacity, renewed the tender in this form : " Then, I tender you the whole sum, in full satisfaction of said note and decree, and also in full satisfaction of the sum by you contracted with *Charles S. Masters* to receive for said note." On the latter tender, the defendant accepted the money. This was in the afternoon, when the sun was about an hour high.

Nearly at the same time, Mr. *Boardman*, in behalf of the plaintiff, tendered to the defendant a quit-claim deed, duly executed by the plaintiff, of the land in question ; which the defendant refused to accept.

The plaintiff immediately offered *Aaron Hitchcock*, of *New-Milford*, as one of the appraisers of the land, and, at the same time, demanded of the defendant the note upon which the decree of foreclosure was had. The defendant refused to give it up ; or to name an appraiser on his part, until he had seen his counsel, Mr. *Benedict* of *Woodbury*. He also objected to *Hitchcock*, as one of the appraisers, saying it was unfair to go out of town for an appraiser. He added, however, that he would see Mr. *Benedict*, early the next morning ; and if he said it was proper, he would then appoint an appraiser. The plaintiff objected to any postponement, and refused to agree upon any future time, saying that that was the last day.

On the next day, the defendant, on his return from *Woodbury*, named to the plaintiffs, *Philo De Forest*, of *Woodbury*, as an appraiser ; to which the plaintiff replied, that he would not have him on his land. Nothing more was done, or offered, in relation to this subject, by either party.

Some days after the tender and reception of the money, as above stated, *R. R. Hinman*, Esq., the son of the plaintiff, and living in the same house with him, called on the defendant for the note, which still remained in his hands ; and the defendant delivered it up to him ; and he, immediately after-

wards, delivered it to the plaintiff, in whose possession it has ever since remained.

This case was reserved for the advice of all the Judges.

*Litchfield,*
June,
1822.

Hinman
*v.*
Bacon.

*Sherman* and *D. S. Boardman,* for the plaintiff, contended, 1. That although a foreclosure is a payment of the debt secured by the mortgage, yet the right to redeem is revived, by acceptance, on the part of the mortgagee, or his assignee, of the money secured by the mortgage, or any part of it.

2. That, in this case, the money due on the mortgage was all paid to the assignee, with the interest, and by him accepted, in full both of the debt due, and of the money paid to *Charles S. Masters.*

3. That by this transaction, the plaintiff became invested with the right, either to enforce an execution of the contract made with *Masters,* or to avoid the foreclosure, and recover back his land, at his own election.

*Benedict* and *J. W. Huntington,* for the defendant, contended, 1. That the plaintiff was not entitled to a reconveyance of the land ; first, because the foundation of a decree to that effect must be a contract opposed to the one entered into by the parties ; inasmuch as it was expressly agreed, that the defendant should, notwithstanding the payment of the money, continue the owner of the land. The money was tendered and received, not in payment of the mortgage debt generally, but in part fulfilment of the contract between *Masters* and the defendant for the plaintiff's benefit. This appears from the mutual understanding of the parties that a tender was necessary ; from the manner, in which the tender was made ; from the defendant's refusal to accept the money tendered in the first form, and his acceptance of it in the substituted form ; from the acts of the plaintiff accompanying the tender ; and from his subsequent acts.

Secondly, because the plaintiff, to entitle himself to this relief, must shew, that he performed, or was ready to perform, his part of the contract ; which he has not done ; but, on the contrary, he has refused to perform it.

Thirdly, because there has been no breach of the contract on the part of the defendant.

Fourthly, because such a decree would operate as a great loss and hardship on the defendant.

Fifthly, because there is adequate remedy at law, if any where, by an action on the case for non-performance of the contract.

2. That the plaintiff was not entitled to restitution of the money paid; first, because it was rightfully paid under the contract.

Secondly, because the parties would not be in *statu quo. Hunt* v. *Silk,* 5 *East* 449. *Hinman* v. *Bacon,* 2 *Conn. Rep.* 147. 151. 155.

Thirdly, because if the contract has been rescinded, an action at Law is the appropriate, and an adequate remedy.

3. That the plaintiff was entitled to no other relief.

Hosmer, Ch. J. The plaintiff alleges in his bill, that he mortgaged several pieces of land as security collateral to a promissory note, which note and mortgage have been assigned to the defendant; that one of the aforesaid pieces of land has been foreclosed, and the legal title vested in the defendant; and that since this period, he has paid the above note and all costs to the defendant, and received from him the said note; but that, although demanded, the defendant has refused to convey to the plaintiff the foreclosed piece of land, or to repay the money as aforesaid paid to him.

To obtain a reconveyance of the land, or repayment of the money, is the object of the plaintiff's bill.

The facts stated in the bill are admitted, except those in relation to the payment of the money abovementioned, in satisfaction of the said note and costs; and these facts are denied.

From the record it appears, that at the time when the above note and mortgage were assigned to the defendant, by one *Charles S. Masters,* the assignee of the mortgagees, an agreement was made by *Masters,* to procure a release of the foreclosed premises from the said mortgagees to the defendant, which was afterwards accordingly done. At the same time, the defendant agreed with *Masters,* that he would not, until after the expiration of six months, bring forward any process to foreclose the residue of the lands mortgaged, nor commence any suit on the note; and that on payment of the money due to him, within the above period, he would deliver up the note to the plaintiff, and would pay him what the piece of land foreclosed should be appraised at, by judicious and disinterested men to be agreed on; and in the event of their dis-

agreeing, that each should choose an appraiser, and that they should elect a third. No appraisment of the land has ever been made; but within the specified period, the plaintiff selected an appraiser, and demanded of the defendant to make choice of another, which he declined to do, until he had seen his counsel, saying, at the same time, that, if it was proper, early the next morning he would make the appointment. The plaintiff objected to any postponement; and refused to delay the business to any future period. On the next day, the defendant named an appraiser to the plaintiff, who replied, that he would not have him on his land. Thus terminated the negotiation, relative to the appraisement.

The plaintiff, within the time prefixed, in two different forms, tendered the money due to the defendant. In the first place, he made a tender of money in full of the note, the interest upon it, and the costs of foreclosure. This the defendant refused to accept. The plaintiff then tendered the same money, in full satisfaction of the note, the decree of foreclosure, and the sums which the defendant agreed with *Charles S. Masters*, to receive for the note.

In review of the facts, thus abridged, it is undeniably clear, that the money tendered was not received in satisfaction of the note and costs of suit. The tender made and accepted, although it operated as a payment of the defendant's debt, was in performance of the contract made between the defendant and *Masters*. This is apparent from the words of the tender, which were; "I tender you the whole sum above, in full satisfaction of said note, and decree, and also in full satisfaction of the sum by you contracted with *Charles S. Masters* to receive for said note." The accompanying and subsequent acts of the plaintiff, speak the same language. A deed was tendered in fulfilment of the contract; an appraiser was named, for the appraisement of the land foreclosed; and the objection made by the plaintiff to the person elected, by the defendant, was personal, and not to the object of his appointment; and what puts the enquiry past controversy, there was an actual refusal to accept the money offered merely in satisfaction of the note and decree. The delivery of the note to the plaintiff, after the acceptance of the money, is a very immaterial fact, and has no operation on the legal result, as it was in pursuance of the contract with *Masters*.

There exists no question, if the plaintiff paid, and the defendant received, the money before mentioned, in full satis-

faction of the note and decree of foreclosure, and this were the entire case, that *Hinman* would be entitled to a reconveyance of the property mortgaged. But the facts are in opposition to the preceding hypothesis. The money was not paid and accepted, with the view of satisfying the mortgage, but to obtain the benefit of the contract with *Masters.* Unless there has been a performance of the condition precedent, contained in that agreement, the plaintiff, at present, from the money paid, can derive no benefit. By the tender and acceptance of it, *Hinman* had acquired a right to procure an appraisement of the land foreclosed ; and after this event, the defendant would be obliged to pay him the estimated value ; but, he stumbled at the threshold, by selecting an appraiser, and demanding an instantaneous performance of a similar act of the defendant. The contract specified no time within which this act should be done ; and on the most equitable principles, the defendant must be allowed a reasonable period, in which to consult with his counsel, and to exercise his own reflections on the subject of his choice. The conduct of the plaintiff, in refusing to accede to the defendant's appointment of an appraiser, was a waiver of the antecedent choice, which he had made, and put the parties in *statu quo.* He can have no claim on *Bacon* for the foreclosed land ; the supposition is most inequitable. By the foreclosure and deed of release from the mortgagees, it became the legal property of the defendant ; and the contract with *Masters* was merely intended, on payment of the mortgage debt and costs, to oblige himself, in a prescribed mode, to do what in justice the plaintiff might require. If *Hinman* has not received the fruit of this agreement, it is solely attributable to his own conduct. As to the money paid to the defendant, it was equitably his due, and it remains so, at the present moment. If, however, there were any remedy to recover, it would not be necessary for the plaintiff to recur to the extraordinary powers of this court.

The other Judges were of the same opinion.

Bill to be dismissed.